days of delivery of the notification of the initial determination to UC Express.

■ *Rule* 4:4–6 explains that an attorney acknowledgement of service of process on behalf of a client "shall have the same effect as if the defendant had been properly served." While UC Express does not provide legal representation, UC Express is Lowe's representative with specific authority to receive determinations from an administrative body on behalf of Lowe's. *See Air–Way Branches, Inc. v. Bd. of Review,* 10 *N.J.* 609, 613–15, 92 *A.*2d 771 (1952) (holding that a determination sent to a warehouse manager with no authority to accept or acknowledge service of legal process is insufficient to begin the seven-day appeals timeline for an employer to appeal employee eligibility of benefits). Thus, the issue is whether Lowe's filed the appeal within seven calendar days of UC Express' receipt of the initial determination. Because the record does not reveal when UC Express received the determination, a rehearing as to timeliness of Lowe's appeal would be necessary even absent the clear violation of federal law.

Reversed and remanded.

84 A.3d 1048

JANESSA GOURDINE, PLAINTIFF, v. TYSON CUMMINGS, DEFENDANT.

ALNIQUE TERRY, PLAINTIFF, v. TYSON CUMMINGS, DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided October 16, 2013.

*Alnique Terry,* plaintiff pro se.

*Tyson Cummings,* defendant pro se.

Monmouth County Division of Social Services, intervening third party (*Margaret A. Freeman* and *Patrick J. Boyle,* attorneys).

L.R. JONES, J.S.C.

What happens when a county probation department successfully collects a lump sum of money, via tax refund intercept, from a child support obligor who owes child support arrears to multiple claimants under different accounts? To whom does probation pay the money? This case presents this issue, and the respective claims and rights of two different custodial parents as well as a county welfare agency to reimbursement of child support arrears from the same delinquent defendant.

## FACTUAL BACKGROUND

Plaintiffs Janessa Gourdine and Alnique Terry each have a child fathered by defendant, Tyson Cummings. Gourdine is the mother and custodial parent of defendant's child, J.G. Under an existing court order, defendant must pay plaintiff $59 per week in child support, payable through probation. As of August 12, 2013,

defendant owes $12,978.98 in unpaid child support arrears on this account (Account # 1).

Terry is the mother and custodial parent of defendant's other child, T.T. Under another existing court order, defendant owes Terry $50 per week in child support, payable through probation via a second account. As of August 12, 2013, defendant owes $2777.64 in unpaid child support arrears on this account (Account # 2).

On Account # 1, defendant owes the entire $12,978.98 in arrears to Gourdine. On Account # 2, however, defendant owes the majority of the outstanding arrears not to Terry directly, but rather to the Monmouth County Division of Social Services ("MCDSS"), which has a lien on the account. Specifically, Terry, an Ocean County resident, had previously lived in Monmouth County back in 2006, and pursuant to *N.J.S.A.* 44:10–49, had sought and obtained emergency relief through MCDSS, which paid Temporary Assistance for Needy Families (TANF) funds to Terry as a result of defendant's non-payment of child support. Further, MCDSS had subsequently filed a family court complaint on behalf of Terry against defendant, in order to establish both defendant's paternity of T.T., as well as his ongoing duty of child support pursuant to the New Jersey Parentage Act, *N.J.S.A.* 9:17–38 to 59. In November, 2006, the Monmouth County family court entered an order fixing defendant's child support obligation, and defendant proceeded to accrue substantial support arrears thereafter. Meanwhile, MCDSS continued to provide public assistance to Terry from October 2006 through December 2007. In consideration for such assistance, Terry assigned her child support rights against defendant to MCDSS for the period of assistance, pursuant to 42 *U.S.C.A.* § 608(a)(3)(A) and *N.J.S.A.* 44:10–49.

Ultimately, Terry went off public assistance and stopped receiving funds from MCDSS. Defendant still had an ongoing child support obligation to Terry on this account, along with arrears of $2774.64. As a result of plaintiff's assignment of rights to MCDSS, however, defendant actually owed $2405.03 of the

$2774.64 arrearage directly to MCDSS, and owed the remaining $369.61 in arrears to Terry directly.

Accordingly, as of August 12, 2013, defendant owed total child support arrears of $15,753.62 to the following three claimants: (1) Gourdine ($12,978.98 for support of J.G.), (2) Terry ($369.61 for support of T.T.); (3) MCDSS ($2405.03 for past support of T.T.), all payable through probation.

In 2013, probation successfully collected $4456 from defendant by way of an intercept of his 2012 federal income tax refund. After securing the funds, probation placed a distribution hold on this amount pending direction from the court as to how to allocate these intercepted funds between the multiple claimants and accounts.

## LEGAL ANALYSIS

The court first notes that while there are three claimants against defendant for child support arrears, in actuality there are actually only two accounts. The first account is for the support of the Gourdine/Cummings child, J.G., and the second account is for the support of the Terry/Cummings child, T.T. The third claimant, MCDSS is essentially an assignee of a portion of the arrears owed by defendant on the Terry account. This is a significant point, since the MCDSS lien is only against the Terry funds, and not in any way against the Gourdine funds.

For this reason, the court holds that the most appropriate first step in the analysis is to determine how to apply the $4456 in tax intercept funds as between the Gourdine support account and the Terry support account, as if MCDSS had no assigned interest in the Terry account, and as if all arrears owed on the Terry account were hypothetically owed to Terry directly. Such a process is fair and equitable, since the rights of Gourdine should not be diminished or compromised by the lien, which arose from payments made by MCDSS to another person on another account for the support and benefit of a child other than that of Gourdine.

■ The second step in the analysis is to mathematically allocate the seized funds between the Gourdine child support account and the Terry child support account on a pro rata basis, i.e., based upon the comparative percentage of arrears which exists between the two accounts. The legal foundation for such allocation rests in *N.J.S.A.* 2A:17–56.10, which authorizes the pro rata collection and distribution of child support when there is more than one child support order and insufficient funds available to meet all the orders. Here, the Gourdine arrears comprise 82.4% of the total arrears ($12,978.98/$15,753.62), while the Terry arrears constitute 17.6% of the total arrears ($2774.64/$15,753.62). As the funds seized by probation total only $4456, there are clearly insufficient funds to meet both orders. Accordingly, by allocating defendant's tax refund of $4456 between the two files on a pro rata basis, the court directs that probation is to apply $3671.74 (82.4% of $4456) towards the arrears on Gourdine account, and $784.26 (17.6% of $4456) towards the arrears on the Terry account.

■ Once this step is complete, there is no further analysis relative to the Gourdine account, since there is no welfare lien on that account. As regarding the Terry account, however, there remains a lien by MCDSS. Since there are insufficient funds to pay off all arrears owed on this account, the next step in the analysis is to determine how to allocate the $784.26 applied to the Terry account as between the arrears owed by defendant to Terry ($369.61), and the arrears owed to MCDSS ($2405.03).

While one might reasonably conclude that the appropriate solution is to again divide the funds on a pro rata basis between Terry and MCDSS in a manner similar to the pro rata allocation between the Gourdine account and the Terry account, the court holds that such a pro rata allocation between a custodial parent who formerly received public assistance, and a county welfare agency who is still owed unpaid arrears, is contraindicated by applicable federal law.

As opposed to a pro rata allocation between arrears owed to the custodial parent and the county welfare agency, the general

principle of priority in disbursement of payments is established under federal statute, 42 *U.S.C.A.* § 657, which governs "distribution of collected support" in such circumstances. This law, along with the regulations set forth in 45 *C.F.R.* §§ 232.11, 302.51, 302.52, and 303.72, delineate the requirements of the assignment of rights provisions in welfare cases and instructions for the distribution of child support in such circumstances.

42 *U.S.C.A.* § 657(a)(2)(B)(i), states that in the case of a family that formerly received assistance from the State, the State "shall first pay to the family the excess amount, to the extent necessary to satisfy support arrearages not assigned...." Accordingly, it may appear at first blush that as a matter of law and policy, the funds applied to the Terry account should first be applied to the arrears owed to Terry, who was formerly but not presently on public assistance, and should then only go toward the MCDSS arrears once the arrears owed to plaintiff are fully extinguished.

Under federal law, however, there is a very specific exception to this protocol for priority of payment, which is applicable in the present case. Specifically, when the probation department secures the funds in question by virtue of a *federal tax refund intercept*, then in such instance the priority of payment reverses itself: The collected funds are first applied towards satisfying the outstanding arrears owed by defendant to the government before repaying the arrears owed directly to the custodial parent. This result arises from strict federal guidelines as to how probation may distribute tax intercepts, which is one of the few times that welfare arrears get paid before direct arrears from recovered funds of the debtor.

The Federal Tax Refund Offset program, 45 *C.F.R.* § 303, authorizes the collection of past-due child support through the interception of tax refunds. The program was enacted by Congress in 1981 and was initially restricted to child support arrears owed to public assistance agencies (AFDC) in order to recoup welfare grant monies paid. Welfare recipients are required to sign an assignment of support rights to the agency for the period

they are receiving benefits as the money used to pay those benefits is both state and federally funded.

In 1984, the program was expanded to include authority to use intercepts in non-assistance (non-AFDC) cases where there were arrears outstanding. In 1990, the Omnibus Budget Reconciliation Act of 1990 (*P.L.* 101–508) further expanded the Act to include, in certain circumstances, intercept collection for spousal support or support for adult disabled children in non-AFDC cases. However, any case subject to a tax intercept must be a IV–D case where support is either assigned to social services or collection was assigned to probation. 45 *C.F.R.* § 303.72(a)(1).

While probation may now utilize tax intercepts to recover direct support arrears from the obligor to the obligee, the key point is that the federal Tax Refund Offset program was initially and primarily established to assist welfare agencies (AFDC) in the reimbursement of arrears due to those agencies. This is a mandatory program and must be complied with when the criteria of 45 *C.F.R.* § 303.72 are met, i.e., if support is assigned to the state, with outstanding arrears of at least $150.

In the present case, the Terry account includes prior welfare assistance with assigned arrears of at least $150. Such arrears must be satisfied from the tax refund intercept before non-welfare arrears under the federally mandated priority. Pursuant to 42 *U.S.C.A.* § 666(3)(A), (B), 7(C) as well as 42 *U.S.C.A.* § 457(a) as referenced in 45 *C.F.R.* §§ 302.51(a)(3)(i) and 303.72(a)(1), tax intercepts are to be applied first to arrears due to the state agency (welfare) with an assignment of support rights, and once those arrears are satisfied, to the IV–D Agency providing services (probation) to apply to unassigned arrears due to the parent.

*N.J.S.A.* 2A:17–56.16 charges the Administrative Office of the Courts to "promulgate rules and regulations concerning procedures for determining which support cases, and which cases of indebtedness in accordance with Section 1 of *P.L.* 1995, *c.* 290 (C. 2A:17–5611b) are appropriate for application of tax setoff ..." In addition, *N.J.S.A.* 2A:17–56.63 requires probation to handle collec-

tion and disbursement of child support and "(a)ll payments shall be disbursed in accordance with federal requirements."

The net result of the inversion of payment priority is as follows: There is $784.26 available for application to the Terry account, which is insufficient to satisfy the outstanding assignment of arrears defendant owes to welfare for child support funds previously advanced to Terry ($2405.03) and the child support arrears owed to Terry directly ($369.61). Since the funds were obtained by probation via tax intercept, under federal law probation first applies the totality of the $784.26 against the arrears owed to welfare, reducing the arrears owed to welfare by this amount. Probation does not apply these funds against the arrears owed to Terry, and such arrears remain unpaid and unaffected by the tax intercept under the circumstances of this case. Once the welfare arrears are paid off in full (from future tax intercepts or otherwise), then at that juncture any additional tax intercepts may be applied against any child support arrears owed directly from defendant to Terry at that time.

The court notes that between the date of this decision and the date of distribution by probation, the actual amount of arrears owed by defendant to any of the three claimants (Gourdine, Terry, and MCDSS relative to the Terry account) may change. In such circumstance, however, the three-step arithmetic formula and progression nonetheless remains the same, which by way of summary is as follows:

ALLOCATION OF FUNDS OBTAINED VIA TAX REFUND INTERCEPT

*Step 1:* Determine the pro rata comparative percentage of total arrears owed on the Gourdine and Terry accounts (as if there were no welfare assignment or lien on the Terry account);

*Step 2:* Pay the pro rata portion of the tax intercepted funds for the Gourdine account to Gourdine as partial payment against existing child support arrears;

*Step 3:* Pay the remaining pro rata portion of the tax intercepted funds for the Terry account to MCDSS, reducing the welfare arrears by such amount.

As a final point, the fact pattern in this case provides a compelling mathematical example of just how important the establishment of a child support probation account can be to a custodial

parent. If Gourdine did not have a probation account at the time of the tax intercept, neither probation nor the court may have even been aware of the substantial arrears owed her by defendant. In such instance, there would have been no pro rata allocation of the $4456 tax intercept between the Gourdine and Terry accounts. Instead, the funds may have been applied as follows:

A) First, the MCDSS would have been repaid its assignment lien of $2405, leaving a remaining balance of $2051 in tax intercept funds.

B) Second, Terry would have been repaid $369.61, leaving a balance of $1681.39.

C) The remaining $1681 would have been refunded to the defendant.

None of the tax intercepted funds would have gone to Gourdine. Instead of receiving $3674.71 towards the arrears, this money would have been allocated elsewhere and defendant's unpaid arrears owed to Gourdine would have remained at $12,978.98. Accordingly, the fact that Gourdine had a probation account is the exact reason why she was able to recover $3674.71 in child support arrears.[1]

In summary, and for the foregoing reasons, the court will enter an order releasing the hold on the intercept and authorizing probation to distribute the funds in accordance with this order and in compliance with all federal and state laws as to the distribution and priority of payment. There is no further action presently pending.

---

[1] In addition to the opportunity for a tax intercept to collect outstanding arrears, additional benefits of a probation account include: (a) ongoing record-keeping of child support owed and received; (b) enforcement applications proceedings by probation when necessary; and (c) periodic reviews for cost of living (COLA) adjustments in support to account for inflation, without the necessity of the custodial parent having to file his or her own motion with the court to seek similar relief.